**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Miscellaneous Action No. 20-mc-00153-CMA

SALT MOBILE S.A.,

    Petitioner,

v.

LIBERTY GLOBAL INC., and
MICHAEL FRIES,

    Respondents.

**ORDER GRANTING APPLICATION AND PETITION FOR AN ORDER
TO CONDUCT DISCOVERY FOR USE IN FOREIGN PROCEEDINGS**

This matter is before the Court on the Application and Petition for an Order to Conduct Discovery for Use in Foreign Proceedings Pursuant to 28 U.S.C. § 1782 ("Application") submitted by Salt Mobile S.A. ("Petitioner"). (Doc. # 1.) Liberty Global Inc. and Michael Fries (together, "Respondents") oppose the Application.[1] For the following reasons, the Court finds that the statutory requirements of 28 U.S.C. § 1782 are satisfied, and the factors identified by the Supreme Court in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004), weigh in favor of granting the Application.

---

[1] Petitioner initially named Liberty Media Corporation and John C. Malone as respondents. On May 10, 2021, pursuant to Petitioner's Notice of Withdrawal Without Prejudice (Doc. # 41), the Application was withdrawn without prejudice as to Respondents Liberty Media Corporation and John C. Malone only. (Doc. # 47.)

## I. BACKGROUND

Petitioner Salt Mobile S.A. is a telecommunications provider incorporated in Switzerland with its headquarters in Renens, Switzerland. Sunrise Communications AG ("Sunrise") is a Swiss based telecommunication provider. The instant Application arises out of Sunrise's alleged breach of the exclusivity agreement it entered into with Petitioner in connection with a proposed joint venture to provide enhanced fiber broadband communications services in Switzerland ("SOF Joint Venture"). According to Petitioner, despite having agreed not to engage in M&A discussions with any other party during the exclusivity period, Sunrise accepted a public tender offer to be bought out by Liberty Global plc ("Public Tender Offer"). Petitioner asserts that Sunrise's actions caused it significant harm and billions of Swiss Francs worth of damages.

In this action, Petitioner seeks evidence from Respondents, who were involved in the Public Tender Offer, for use in contemplated civil proceedings in Switzerland against Sunrise ("Contemplated Swiss Proceedings"). Specifically, Petitioner seeks documents, communications, and testimony from Respondents relating to their negotiations and discussions with Sunrise concerning the Public Tender Offer during the exclusivity period. Respondents oppose the Application.

## II. STANDARD OF REVIEW

The statutory requirements of 28 U.S.C. § 1782 are met when "(1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, (2) the discovery is for use in a foreign proceeding before a tribunal, and (3) the application is made by a foreign or international tribunal or any

interested person." *In re Perez Pallares,* No. 10-cv-02528-PAB, 2010 WL 4193072, at *1 (D. Colo. Oct. 20, 2010) (citing *Schmitz v. Bernstein Liebhard & Lifshitz LLP,* 376 F.3d 79, 83 (2d Cir. 2004)).

Whether to permit the requested discovery remains within the discretion of the court, even if all of the statutory requirements are met. *Intel Corp.,* 542 U.S. at 260. The Supreme Court enumerated factors for a court to consider when deciding whether to permit discovery pursuant to Section 1782: (1) whether the documents or testimony sought are within the foreign tribunal's jurisdictional reach, and thus accessible absent Section 1782 aid; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance; (3) whether the discovery request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and (4) whether the request is unduly intrusive or burdensome. *Intel*, 542 U.S. at 264–65. Discovery requests under Section 1782 are evaluated in light of the "twin aims" of the statute—"providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." *In re Application of Michael Wilson & Partners, Ltd.,* No. 06–cv–02575–MSK–PAC (MEH), 2007 WL 2221438, at *3 (D. Colo. July 27, 2007) (quoting *In re Application of Malev Hungarian Airlines*, 964 F.2d 97, 100 (2d Cir. 1992)).

3

### III.   DISCUSSION

**A.   STATUTORY REQUIREMENTS**

The Court finds, and Respondents concede in their Response, that the statutory requirements of 28 U.S.C. § 1782 are satisfied in this case.

First, Respondents reside in the District of Colorado. Liberty Global is a Delaware-incorporated company with its headquarters in Denver, Colorado. Mr. Fries resides in Denver.

Second, the Contemplated Swiss Proceedings qualify as a foreign proceeding before a tribunal for the purposes of Section 1782. The Supreme Court has made clear that "[t]he 'proceeding' for which discovery is sought under § 1782(a) must be within reasonable contemplation, but need not be 'pending' or 'imminent.'" *Intel Corp.*, 542 U.S. at 243. Courts have found that a drafted complaint ready for filing qualifies as a "proceeding" within the meaning of the statute. *See, e.g.*, *In re Application of Top Matrix Holdings LTD*, 2019 WL 6497757, at *4 (S.D.N.Y. Dec. 2, 2019) ("Sworn statements attesting to petitioners' intent to litigate and describing the legal theories on which they plan to rely are sufficiently concrete to meet the statutory requirement."); *Bravo Express Corp. v. Total Petrochemicals & Ref. U.S.*, 613 F. App'x 319, 323 (5th Cir. 2015) (same). Such is the case here, as evidenced by the affidavit of Thomas Werlen, managing partner of the Swiss office of Quinn Emanuel Urquhart & Sullivan. *See* (Doc. # 3 at 12) (stating "Petitioner has invested considerable resources in preparing the lawsuit against Sunrise . . . [including] the preparation of a statement of claim (the equivalent of a complaint in Swiss courts).").

Third, the Application is made by an interested person. The discovery sought by Petitioner is relevant to the claims it will assert as the plaintiff in the Contemplated Swiss Proceedings. (Doc. # 3 at 11–13); *Westjest Airlines, Ltd. v. Lipsman*, No. 15-MC-00174-MSK-KMT, 2015 WL 7253043, at *2 (D. Colo. Nov. 17, 2015) (finding the petitioners were "interested persons" where they would be plaintiffs in the foreign proceedings). Therefore, Petitioner has met the statutory requirements of Section 1782.

## B.   *INTEL* FACTORS

Having concluded that the statutory requirements are satisfied, the Court also finds that the *Intel* factors weigh in favor of granting the Application.

### 1.   Whether the Party from Whom Discovery Is Sought Is a Participant in a Foreign Proceeding

The first *Intel* factor considers whether the foreign tribunal has jurisdiction to order the non-participant in the foreign proceeding to produce the evidence requested in the Section 1782 petition. "[W]hen the person from whom discovery is sought is a participant in the foreign proceeding . . . the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad." *Intel Corp.*, 542 U.S. at 264.

In this case, the Contemplated Swiss Proceedings will be brought against Sunrise, not Respondents. Therefore, this factor weighs in favor of granting the Application. *See In re Request for Int'l Jud. Assistance from the Norrköping Dist. Ct., Sweden*, 219 F. Supp. 3d 1061, 1062 (D. Colo. 2015) (finding that first factor favored allowing discovery where respondent was not "subject to the jurisdiction of the [foreign] court"); *Republic of Ecuador v. Bjorkman*, 801 F. Supp. 2d 1121, 1124 (D. Colo. 2011),

*aff'd*, 2011 WL 5439681 (D. Colo. Nov. 9, 2011) (finding that first factor favored allowing discovery where respondent was "not a participant in the foreign proceeding," and there was no "indication that he would be subject to the jurisdiction of the [foreign tribunal]").

Respondents argue that this factor weighs in favor of denying the Application because Swiss courts have the power to compel third parties to produce documents or provide witness testimony, Respondents agree to submit themselves to the Swiss courts' jurisdiction for the purposes of discovery and compliance with a production order, and the discovery sought is within the possession of Sunrise.

With respect to Respondents' arguments concerning Swiss jurisdiction, the parties have submitted dueling affidavits on Swiss law. Respondents rely on the affidavit Georg Naegeli, senior counsel at the law firm Homburger AG in Zurich, for the proposition that Swiss courts do have the power to compel third parties to produce documents and provide witness testimony. (Doc. # 39 at 6–7) (citing Doc. # 13-1 at ¶¶ 7–10).Petitioner relies on the affidavit of Professor Johann Zürcher, a former Senior Judge of the Zurich Commercial Court, to argue that Respondents "misstate the legal and practical realities of Swiss jurisdiction (which does not extend to Respondents)" and that "Respondents' offer to subject themselves to a Swiss court's jurisdiction is meaningless and unenforceable. . . ." (Doc. # 42 at 3); (Doc. # 23-3 at ¶¶14-15).

Under similar circumstances involving dueling international law affidavits, the Second Circuit reversed a district court order disallowing discovery under Section 1782 as "an unwarranted intrusion into France's system of evidence gathering." *Euromepa, S.A. v. R. Esmerian, Inc.,* 51 F.3d 1095, 1099 (2d Cir. 1995). The court explained:

> We do not believe that an extensive examination of foreign law regarding the existence and extent of discovery in the forum country is desirable in order to ascertain the attitudes of foreign nations to outside discovery assistance.
>
> * * *
>
> We . . . conclude that the district court's analytic approach promoted the very thing that section 1782 was intended to avoid. The record reveals that this litigation became a battle-by-affidavit of international legal experts, and resulted in the district court's admittedly "superficial" ruling on French law. We think that it is unwise—as well as in tension with the aims of section 1782—for district judges to try to glean the accepted practices and attitudes of other nations from what are likely to be conflicting and, perhaps, biased interpretations of foreign law.

*Id.*; *see In re Kegel*, No. 13-CV-02054-REB-BNB, 2013 WL 4462110, at *2 (D. Colo. Aug. 20, 2013) (overruling respondent's challenges to Section 1782 application grounded in international law dispute). This Court declines to delve into the "conflicting and, perhaps, biased interpretations of foreign law" set forth in the parties' affidavits for the reasons articulated by the Second Circuit in *Euromepa, S.A.*

Moreover, the Court is not persuaded that the Application should be denied because some of the information sought is within Sunrise's possession. Section 1782 does not require interested persons to attempt to obtain discovery from a participant to the foreign proceedings before obtaining that discovery from a non-participant. Further, although there is likely some overlap in the responsive documents possessed by Respondents and Sunrise, Respondents' testimony would be unique. *See In re Chevron Corp.*, 749 F. Supp. 2d 141, 161 (S.D.N.Y. 2010) (granting Section 1782 discovery for oral testimony "even if some responsive documents are in [foreign party's] possession and could be reached by the [foreign] courts"), *aff'd sub nom. Lago Agrio Plaintiffs v. Chevron Corp.*, 409 F. App'x 393 (2d Cir. 2010).

### 2. The Receptivity of the Foreign Tribunal to Such Judicial Assistance

"[T]he burden of demonstrating offense to the foreign jurisdiction, or any other facts warranting the denial of a particular application, should rest with the party opposing the application." *See In re Broadsheet LLC*, 2011 WL 4949864, at *3 (D. Colo. Oct. 18, 2011) (quoting *In re Bayer AG*, 146 F.3d 188, 195–96 (3d Cir. 1998), *as amended* (July 23, 1998)). "[A] district court's inquiry into the discoverability of requested materials should consider only authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782"—i.e., "a forum country's judicial, executive or legislative declarations that specifically address the use of evidence gathered under foreign procedures. . . . Absent this type of clear directive, . . . a district court's ruling should be informed by section 1782's overarching interest in 'providing equitable and efficacious procedures for the benefit of tribunals and litigants involved in litigation with international aspects.'" *Euromepa, S.A.*, 51 F.3d at 1099 (citations and quotations omitted).

Petitioner cites to the affidavit of former Senior Judge Zürcher for the proposition that Swiss tribunals are receptive to aid from United States courts and will allow Petitioners to use the requested discovery in the Contemplated Swiss Proceedings. (Doc. # 23-3 at ¶ 17.) Respondents fail to cite to any authoritative proof—i.e., judicial, executive, or legislative declarations—that Swiss court would reject evidence obtained through the Application. Absent any such authoritative proof, the Court finds that granting the instant Application would further the goals of Section 1782.

### 3. Whether the Request Is an Attempt to Circumvent Foreign Discovery Restrictions

The third *Intel* factor looks to "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 265. This factor does not require that the requested discovery be discoverable in the foreign proceeding itself. *See id.* at 260–61 ("[N]othing in the text of § 1782 limits a district court's production-order authority to materials that could be discovered in the foreign jurisdiction if the materials were located there."). Indeed, "through § 1782[,] Congress has seen fit to authorize discovery which, in some cases, would not be available in foreign jurisdictions. . . ." *In re Application for an Ord. Permitting Metallgesellschaft AG to take Discovery*, 121 F.3d 77, 80 (2d Cir. 1997) (citation omitted). However, "if the district court determines that a party's discovery application under section 1782 is made in bad faith, for the purpose of harassment, or unreasonably seeks cumulative or irrelevant materials, the court is free to deny the application *in toto*. . . ." *Euromepa S.A.*, 51 F.3d at 1101 n.6.

Petitioner argues that this factor weighs in its favor because it seeks non-privileged documents in the possession of private parties and Switzerland does not have any law or public policy against such discovery. The Court agrees with Petitioner and finds that Respondents' arguments to the contrary are unavailing.

First, Respondents argue that the Application was made in bad faith because Petitioner has not requested the discovery it seeks in the Application through Swiss proof-gathering processes. However, courts have rejected the notion that a petitioner is required to seek discovery through the foreign tribunal before filing a Section 1782

9

petition. *See, e.g.*, *Metallgesellschaft AG*, 121 F.3d at 79 (explaining that "a 'quasi-exhaustion requirement,' finds no support in the plain language of [Section 1782]" and allowing district courts "to refuse discovery based upon its unavailability in a foreign court or because the foreign court had not first passed on the discoverability of the material sought" would frustrate the statute's underlying purposes); *see also Gorsoan Ltd. v. Bullock*, 652 Fed. Appx. 7, 9 (2d Cir. 2016) ("A district court . . . may not refuse a request for discovery pursuant to § 1782 because a foreign tribunal has not yet had the opportunity to consider the discovery request."). Moreover, the Swiss court "can place conditions on its acceptance of the information to maintain whatever measure of parity it concludes is appropriate." *Republic of Ecuador v. Bjorkman*, 801 F. Supp. 2d 1121, 1123–24 (D. Colo. 2011), *aff'd,* No. 11-CV-01470-WYD-MEH, 2011 WL 5439681 (D. Colo. Nov. 9, 2011) (quoting *Intel Corp.,* 542 U.S. at 260–62).

Respondents also argue that the Application was brought in bad faith because the Zurich Commercial Court has previously found that Sunrise did not breach the Exclusivity Agreement.[2] In so arguing, Respondents urge the Court to compare the merits of Petitioner's Swiss injunctive action with the merits of the Contemplated Swiss Proceedings. The Court declines to do so absent binding authority that compels such resource-intensive analysis.

---

[2] On September 10, 2020, Petitioner sought an *ex parte* preliminary injunction in the Zurich Commercial Court to enjoin Freenet, Sunrise's controlling shareholder, and Sunrise's board of directors from tendering their Sunrise shares under Liberty Global's offer. (Doc. # 23-4 at 6.) On September 16, 2020, the Zurich Court denied injunctive relief. *(Id.*); *see generally* (Doc. # 27-2).

10

### 4.     Whether the Request Is Unduly Intrusive or Burdensome

In its Application, Petitioner seeks documents and testimony concerning the following:

- Liberty Global's, Liberty Media's, and UPC's attempts to acquire shares, or any other form of interest, in Sunrise Group;
- Liberty Global's or Liberty Media's public tender offer to acquire shares in Sunrise Group; and
- the SOF joint venture, including documents and communications specifically about Salt and Sunrise's exclusivity obligations.

Respondents argue that Petitioner seeks highly sensitive information, including Liberty Global's business strategies and privileged communications, and that producing this information presents a significant competitive risk to Respondents.

The Court finds that Petitioner's discovery requests are highly relevant to the claims it will bring in the Contemplated Swiss Proceedings and that they are sufficiently narrow in scope in scope and time—going back only to January 1, 2019—to justify the burden of production imposed on Respondents. *See In re Broadsheet*, 2011 WL 4949864, at *3. Additionally, Petitioner has represented to the Court that it has proposed a draft protective order to Respondents, thereby further lessening the burden. *See In re Ex Parte Application of Kleimar N.V.*, 220 F. Supp. 3d 517, 522 (S.D.N.Y. 2016) ("[G]iven [the applicant]'s willingness to address [the respondent]'s concerns so as to make the subpoena less burdensome to respond to, the subpoena does not place an undue burden on [respondent]"). Respondents have failed to demonstrate why a standard protective order would be insufficient to protect their interests in protecting confidential materials. *In re Michael Wilson & Partners*, 2007 WL 3268475, at *3

11

("Petitioner may potentially represent a competitor of Respondents[,] a standard protective order would protect this interest by prohibiting the dissemination of information covered by that protective order."). Absent such a showing, the Court finds that this factor weighs in favor of granting the Application.

## IV. CONCLUSION

For the foregoing reasons, it is ORDERED as follows:

- the Application and Petition for an Order to Conduct Discovery for Use in Foreign Proceedings Pursuant to 28 U.S.C. § 1782 (Doc. # 1) is hereby GRANTED;

- Petitioner is authorized to serve the subpoenas and Rule 30(b)(6) notices attached as Exhibit 2 to the Declaration of Lucas Bento ("Subpoenas") (Doc. # 2-2) upon Respondents Liberty Global Inc. and Michael Fries;

- Petitioner is authorized to use any evidence obtained pursuant to the Subpoenas in any additional proceeding arising out of the same transactions underlying the Application;

- Should Respondents choose to move for a protective order, then (1) the parties shall meet and confer regarding the contents of a proposed protective order by June 22, 2021, and (2) on or before June 29, 2021, either the parties shall jointly file a stipulated motion for protective order or Respondents shall file a motion for protective order that indicates what language of the proposed order is agreed-upon and what language is disputed; and

- The Clerk of the Court is directed to administratively close this case subject to reopening upon the filing of a motion for protective order or other good cause. If

the case has not been reopened by September 7, 2021, it will be closed without further notice.

DATED: June 10, 2021

BY THE COURT:

CHRISTINE M. ARGUELLO
United States District Judge